**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PRECIOUS OWUSU-BOATENG, ) | |
| ) | |
| *Plaintiff*, ) | CASE NO. 3:22-cv-812 (OAW) |
| ) | |
| v. ) | |
| ) | |
| U.S. CITIZENSHIP & IMMIGRATION ) | |
| SERVICES, ET AL., ) | |
| ) | |
| *Defendant*. | |

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Precious Owusu-Boateng sued the United States Citizenship and Immigration Services (USCIS), the Department of Homeland Security (DHS), and several individual Defendants asserting violations of, *inter alia*, various constitutional rights and the Religious Freedom Restoration Act (RFRA). Defendants moved to dismiss his Amended Complaint (ECF No. 15-1, hereinafter the "Complaint") pursuant to Rule 12(b). *See* ECF No. 25. Plaintiff responded (ECF No. 28) and Defendants submitted a reply, ECF No. 38. The court has reviewed the briefs submitted by the parties. For the reasons discussed herein, the motion to dismiss is **GRANTED with leave to amend.**

**I. BACKGROUND**

Plaintiff is a Reverend and employee of Universal Presbyterian Church of God (UPCG). ECF No. 15-1, pg. 1.[1] He is "an ordained Minister responsible for all the pastoral duties and oversees all the community programs run by UPCG." *Id.* UPCG is a church

---

[1] Citations correspond to the pagination generated by the court's electronic filing software (CM/ECF) and do not necessarily correspond to the parties' pagination. Furthermore, while some of the paragraphs of Plaintiff's Complaint are numbered, not all of them are.

1

and tax-exempt organization and recognized by the United States Department of Justice (DOJ) as an eligible organization to provide representation through accredited representatives who appear on behalf of clients before the Immigration Courts, the Board, and DHS, or DHS alone.  *Id.* at 2 (citing 8 C.F.R. § 1292.11).

On June 4, 2015, Plaintiff arrived in the United States on a B-2 Visa, to assist in evangelism upon invitation by the newly established UPCG, USA.[2]  *Id.* pg. 2.  He returned to Ghana one month later, but shortly thereafter, UPCG requested that he permanently return to serve as its Minister.  *Id.*

On October 2, 2015, UPCG filed a Form I-360 Religious Worker Petition (EB-4) for the plaintiff.  *Id.* That petition was denied and UPCG did not appeal.  *Id.*, at 5.  Instead, on September 22, 2016, UPCG submitted a new I-360 Form "with new evidence."  *Id.*

UPCG relocated several times after an abrupt move from its East Hartford facilities was necessitated.  *Id.* at 8.  It resorted to performing church activities in the basements of members' homes.  *Id.*  The church pursued other facilities and performed services at 181 Oakland Street and maintained an online radio program at the Minister's residence.  *Id.* at 8-9.  Finally, the church found a new home at 135 Burnside Avenue.  *Id.* at 9.  UPCG listed all its addresses on the "amended" Form I-360 except 805 Brewer Street, which is what UPCG used as the clerk's home at one time or another.  *Id.* at 11.  According to the Complaint, USCIS conducted a site inspection on January 5, 2017, at the incorrect

---

[2] The United States Department of State identifies a B-2 visa as a "nonimmigrant" visa appropriate for tourism, or for "participation in social events hosted by fraternal, social, or service organizations." *See* United States Department of State, Visitor Visa, available at: https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited Mar. 16, 2025).

address (805 Brewer Street) and issued a "Notice of Intent to Deny" (NOID) based on the inspection performed at the same. *Id.* at 5, 11.[3]

UPCG contacted USCIS to schedule a second inspection at the correct address, but USCIS did not think another inspection was necessary and approved the UPCG's I-360 Religious Worker Petition on March 15, 2017. *Id.* at 5. On June 22, 2017, Plaintiff filed an Adjustment of Status Form (I-485)[4] based on his I-360 approval. *Id.*, pg. 13.

Nary a word came from USCIS for nearly three years until Plaintiff was asked to respond to a Request for Evidence letter (RFE). *Id.*, pgs. 6-7. On February 21, 2019, Defendant Officer XG0680 issued an RFE to Plaintiff with respect to his Employment Authorization Renewal Application. *Id.* at 6. Plaintiff informed such Officer that the RFE was not in compliance with the USCIS Policy Manual. According to the Complaint, Plaintiff's correction was not well taken. *Id.* at 7. While Defendant Officer approved Plaintiff's Authorization renewal (and extended it for two years), the same Officer then issued a Notice of Intent to Revoke (NOIR) the approval of the underlying I-360 Petition which had been approved on March 15, 2017, based, in part, on the previously improperly performed site inspection. *Id.* UPCG responded with the same set of documents that it used in response to the NOID issued after the ill-performed inspection predating Plaintiff's EB-4 approval. *Id.*

---

[3] Plaintiff's Complaint alleges Defendant Benjamin Guilmette "searched the house by trick" and "without a warrant" and issued a "misleading report" that there was no "signage," among other things. *Id.*, pg. 12.
[4] An I-485 Form is completed to apply to register as a permanent resident or adjust status. "Adjustment of status is the process . . . to apply for lawful permanent resident status (. . . applying for a Green Card) when [one is] present in the United States." USCIS, Adjustment of Status, available at: https://www.uscis.gov/green-card/green-card-processes-and-procedures/adjustment-of-status (last visited Mar. 16, 2025).

3

On November 19, 2019, Defendant Officer XG0680 revoked approval of the plaintiff's previously granted EB-4.[5]  *Id.*  Plaintiff's adjustment of Status Applications also were denied.[6]  *Id.* USCIS based the revocation on UPCG's (1) failure to provide documentation justifying how it intended to compensate Plaintiff; (2) failure to prove that Plaintiff met the two-year prior qualifying experience requirement; and (3) failed on-site inspection.[7]  The Administrative Appeals Office (AAO) affirmed USCIS's decision.  ECF No. 25-3, pg. 3.  Plaintiff contends that Defendants submitted the "wrong case and its record of proceedings" to the AAO.  ECF No. 15-1, pg. 16.  He added that the AAO turned a "blind eye" and affirmed USCIS's revocation consistent with the wrong case file.  *Id.*, pg. 19.[8]

## II.  <u>LEGAL STANDARD</u>

Defendants move pursuant to Fed. R. Civ. P. 12 to dismiss Plaintiff's Complaint. Plaintiff is a self-represented litigant.  Courts "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal citation and quotation marks omitted).

---

[5] An EB-4 visa is an employment-based visa that is a pathway to permanent residence. USCIS, "Special Immigrant Religious Workers" (Jan. 24, 2025) available at: https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fourth-preference-eb-4/special-immigrant-religious-workers (last accessed March 14, 2025).  That is, employers may file a Form I-360, Petition for Special Immigrant while that person is present in the United States through an EB-4 visa. *See* 8 C.F.R. § 204.5(m).  If that I-360 is approved, it allows the temporary religious worker to apply for a (more permanent) immigrant visa either from abroad or, if already in the United States, apply for adjustment of status to that of a lawful permanent resident (via a separate form, Form I-485).  *See* 8 C.F.R. § 245.2(a)(3).
[6] The Plaintiff's Complaint does not explicitly state that his (and his family's) Adjustment of Status Applications were denied, but it seems to suggest as much.
[7] Given that Plaintiff referred to the revocation throughout his Complaint, the court may consider the exhibits annexed to Defendant's motion without converting the same to a summary judgment motion under Rule 12(d).  Even if that were not the case, the revocation (ECF No. 25-2) is integral to the complaint because it "relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)
[8] Plaintiff did not say whether or not the "wrong case" file included materially different information, or if the decision AAO made "consistent" with the wrong case file was inconsistent with the "correct" case file.

### A. <u>12(b)(1)</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists." *Makarova*, 201 F.3d at 113. When considering a motion to dismiss under Rule 12(b)(1), the court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

### B. <u>12(b)(6)</u>

"To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citations omitted). The court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

### III. DISCUSSION

#### A. *Bivens*

As a preliminary matter, the court declines to extend *Bivens* and its progeny into the immigration context. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court of the United States authorized a damages action against federal officials for alleged violations of the Fourth Amendment. In part, this is because, "An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Id.* at 392. Indeed, absent recourse for constitutional violations, the text enshrined in this nation's most important document would ring hollow. Thus, the *Bivens* doctrine reflects the judiciary's solemn commitment to enforcing the plain text of the constitution – words that undoubtedly carry meaning and substance independent of any action by Congress.

However, the Supreme Court steadfastly has rebuffed attempts to expand *Bivens* remedies beyond isolated constitutional contexts, and in particular, the Court has declined to apply them to the immigration context, where Congress has established comprehensive regulatory schemes. Significantly, the Supreme Court has refused to expand *Bivens* in other contexts 11 times over the past 42 years. *Egbert v. Boule*, 596 U.S. 482, 486 (2022). The Court has cautioned that "prescribing a cause of action is a job for Congress, not the courts." *Id.* Thus, the Court has firmly established that even modest extensions of *Bivens* and its progeny require extraordinarily close factual parallels to previously recognized claims. *See Ziglar v. Abbasi*, 582 U.S. 120, 147–48 (2017).

6

The court finds that none of Plaintiff's claims bear resemblance to established *Bivens* causes of actions. Presently, the three identified categories of *Bivens* actions are: (1) Fourth Amendment search and seizure claims, *Bivens*, 403 U.S. at 396-97; (2) Fifth Amendment equal protection claims, *Davis v. Passman*, 442 U.S. 228, 234 (1979) (congressional staffer to assert a *Bivens* claim against the congressman who employed her based on sex); and (3) Eighth Amendment claims against federal prison officers, *Carlson v. Green*, 446 U.S. 14, 22-23 (1980). Here, Plaintiff seeks to bring a *Bivens* suit against a "new category of defendants" and a different statutory scheme. *Ziglar*, 582 U.S. at 135, 139-40. And unlike the federal narcotics officers enforcing criminal law in *Bivens*, these federal officers are immigration officers operating under immigration law, which was "substantively distinct" from criminal law because "[i]mmigration enforcement is by its nature addressed toward noncitizens, which raises a host of considerations and concerns that are simply absent in the majority of traditional law enforcement contexts." *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019); *Cf. Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 886 (6th Cir. 2021) ("Every other circuit . . . faced with an invitation to expand *Bivens* to the border/immigration context has held firm."), *cert. denied sub nom.* Elhady v. Bradley, 143 S. Ct. 301 (2022). Therefore, Plaintiff is requesting a new remedy in a new context. *See Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) (*en banc*) (no Bivens claim regarding extraordinary rendition of alien); *see also Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2011) (no *Bivens* claim for constitutionally invalid immigration detention).

Having decided that this would be a new *Bivens* context, the court must now evaluate whether special factors counsel against creating a *Bivens* remedy. As the

7

court's discussion thus far shows, courts dealing with the potential extension of *Bivens* into the immigration context thus far have declined to do so. Furthermore, Congress frequently legislates in this area and has devolved considerable power to the executive to create policies and procedures for precisely the sort of claims Plaintiff raises here. *Ziglar*, 582 U.S. 148–49. Indeed, Congress has insulated some of USCIS decisions from judicial review. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(B). Given its frequent legislation and, in fact, its decision to withdraw certain claims from judicial review, it appears crystal clear that Congress did not intend for a private cause of action in this context. Finally, as the defendants point out in their briefing, Plaintiff had alternative remedies.

*Bivens* actions may not be brought against the United States, federal agencies, or individual federal officers in their official capacity. *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) Thus, to the extent Plaintiff's Complaint can be construed as doing the same, those claims are dismissed.

In sum, any *Bivens* based claim is dismissed.

### B. Religious Freedom Restoration Act Claims

The Religious Freedom Restoration Act of 1993 (RFRA) prohibits the government from substantially burdening an individual's exercise of religion. Under RFRA, "the Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means necessary of furthering that compelling government interest." *Newdow v. Peterson*, 753 F.3d 105, 108-09 (2d Cir. 2014) (quotation omitted). "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his

beliefs.'" *Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996) (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.,* 450 U.S. 707, 718 (1981)); *see also Westchester Day Sch. v. Village of Mamaroneck,* 504 F.3d 338, 348 (2d Cir.2007) ("Supreme Court precedents teach that a substantial burden on religious exercise exists when an individual is required to 'choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion. . .on the other hand.'" (quoting *Sherbert v. Verner,* 374 U.S. 398, 404 (1963))).

The plaintiff does not identify a substantial burden on his religious exercise. According to his Complaint, Plaintiff claims being a "beneficiary in the proceedings" and by Defendants forcing Plaintiff's church to spend significantly more on rents, USCIS fees, attorneys, and representations divert resources from UPCG's mission.[9]

As explained above, the reasons for denying Plaintiff's application were three-fold: (1) failure to provide documentation justifying how it intended to compensate Plaintiff; (2) failure to prove that Plaintiff met the two-year prior qualifying experience requirement; and (3) failed on-site inspection. Plaintiff does not meaningfully address the two-year prior qualifying experience requirement. While he alleges an incorrect file was sent to the Administrative Appeals Office (ECF No. 15-1, pg. 16), he does not allege or identify material differences between the "wrong" and "correct" case file. Nor does he connect how providing documentation justifying payment methods forces him (or UPCG) to abandon a tenet of his or his church's religious beliefs. *Iglesia Pentecostal Casa De Dios Para Las Naciones, Inc. v. Duke*, 718 F. App'x 646 (10th Cir. 2017) (disposing of objection to compensation requirement in the context of an R1 visa); *cf. Nat'l Capital Presbytery v.*

---

[9] The court notes that Plaintiff is proceeding pro se, and it is unclear who the attorneys are that he references in his Complaint.

*Mayorkas*, 567 F. Supp. 3d 230, 245 (D.C. Cir. 2021) (distinguishing *Duke*). Complying with the kind of document requests at issue here cannot be said to be a substantial burden on practicing one's religion. Therefore, Plaintiff's RFRA claims are dismissed.

### C. First Amendment Retaliation

Under the First Amendment, government officials may not perform retaliatory actions against persons exercising their right to free speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To properly plead a First Amendment retaliation claim, Plaintiff must allege facts demonstrating that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Plaintiff fails to plead facts suggesting that the defendants acted in a manner "motivated or substantially caused" by his exercise of his First Amendment rights. Nothing besides the conclusory allegation that Plaintiff's RFE response "did not go down well" suggests that there was a causal link between his assumed protected speech within his RFE response and an adverse action by the defendants.[10] Therefore, Plaintiff's First Amendment retaliation claim is dismissed.

### D. Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law;

---

[10] Indeed, it appears from the face of Plaintiff's complaint Defendant that "Officer-XG0680 approved Plaintiff's Employment Authorization Renewal and extended it for two (2) years" after Plaintiff's RFE response. *See* ECF No. 15-1, pg. 7.

nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  By its terms, the Fourteenth Amendment only applies to the states; it does not also apply to the federal government.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) ("[T]he Fourteenth Amendment applies only to the states."); *Russo v. Glasser*, 279 F. Supp. 2d 136, 142 (D. Conn. 2003).  Therefore, Plaintiff's Fourteenth Amendment claims are dismissed.

### E. Double Jeopardy

Plaintiff makes discrete references to double jeopardy violations throughout his complaint.  *See* ECF No. 15-1, Counts II, IV, V, VII, VIII, IX, and X.  The double jeopardy clause plainly does not apply in this context. *See Ragbir v. Barr*, 827 Fed. Appx. 12, 14 (2d Cir. 2020).  Therefore, his double jeopardy claims are dismissed.

### F. Criminal Statute with No Private Right of Action

Plaintiff also brings suit pursuant to 18 U.S.C. § 1515.  *See* Counts III, IV, VII, VIII, IX, and X.  Section 1515 is a criminal statute with no private cause of action or civil remedy.  Therefore, any claim made pursuant to Section 1515 is dismissed.

### G. Regulations Do Not Create Private Rights of Action

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  A federal statute may create such a right of action either expressly or by implication.  *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2836 (2015).  When Congress has not explicitly provided a private right of action, however, "the presumption [is] that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).

Plaintiff's briefing, even liberally construed, does not persuade the court that Congress intended a private right of action of the sort presented in this matter. Furthermore, Plaintiff's Amended Complaint cannot be construed to include an Administrative Procedure Act claim. Therefore, his claims pursuant to 8 C.F.R. § 103.3 hereby are dismissed.

IV. **CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss is **GRANTED**.

Plaintiff is granted an opportunity to amend his complaint with respect to his RFRA and First Amendment claims. Any amended complaint must be filed within thirty (30) days of this order.

**IT IS SO ORDERED** in Hartford, Connecticut, this 17th day of March, 2025.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE